## GREEN, ADM'R OF FAGAN, Jr., v. THE DISTRIBUTEES OF FAGAN, Sr.

1. It is the duty of an administrator to defend the estate he represents, against claims, which he believes are unjust, and if, under an honest impression that a demand against it ought not to be paid, he incurs expenses in litigating it, they should be allowed him in the settlement of his administration accounts.

2. If an administrator, having a good defence to a claim preferred against the estate, neglects to interpose it, but suffers judgment to go against him, and in consequence of such neglect, he is compelled to resort to further and other proceedings, to relieve himself of the judgment, the expenses of such subsequent litigation do not constitute a proper charge against the estate.

3. If an administrator is aware of a credit, to which the estate of his intestate is entitled, on a claim presented against it, but neglects to avail himself of it, and permits judgment to be entered against him for the whole amount of the claim, he is personally chargeable to the extent of such credit.

4. Where a petition for final settlement and distribution of an estate is filed in the names of the widow and other distributees of the deceased, it is not error to refuse to dismiss it on motion of the widow alone.

5. A decree rendered by an orphans' court, in favor of an infant distributee, should be in his name, by his guardian, if he have one, but if it be in his name alone, without the intervention of a guardian, it is not reversible on error.

6. Where the decree of an orphans' court in favor of an infant distributee, without the intervention of a guardian, directs execution to issue thereon, the award of execution is erroneous.

7. Since the passage of the act of March, 1848, "securing to married women their separate estates, and for other purposes," a decree of an orphans' court for the distributive share of a married female distributee, should be in the names of the husband and wife, for the use of the wife.

Error to the Orphans' Court of Benton. Before the Hon. Robert H. Wilson, Judge.

THIS cause commenced by the filing of a petition in the court below, in the names of the distributees of William Fagan, jr., deceased, praying that the plaintiff in error, who was administrator of the estate, be compelled to make final settlement of his administration, &c. At the trial, the widow of the deceased, one of the distributees, moved to dismiss the petition, on the ground that she had not signed it, or authorized any person to do so for her, which motion the court overruled. In the course of the settlement, it appears, that the plaintiff claimed a credit for costs, &c. incurred in defending a suit instituted against him in his representative character by one Riggs, on a note made by his intestate in his life time, and in support of the claim, proved, that he had been advised by the widow of the deceased, and other of the distributees, that the demand was unjust, and ought not to be paid, unless first established by suit, but the court refused to allow the credit. It further appears, that one Rainey, administrator of William Fagan, sr., commenced a suit against plaintiff's intestate in his life, which was revived after his death, against plaintiff as his administrator, on a note that said William Fagan, jr., had given to said Rainey, administrator, for a slave sold by the latter to the former: that the plaintiff interposed as a defence, a payment of $100, made by his intestate on said note, for which he held said Rainey's receipt, and that the defence was withdrawn on the promise of said Rainey to allow the credit on the note, but which promise he violated, and took judgment for the full amount of the note : that execution issued of this judgment, *de bonis intestatis*, and was returned no property, and that a suit was then commenced against plaintiff and the securities on his administration bond, suggesting a *devastavit*, upon which judgment was recovered against them for the full amount of the judgment, that had been rendered against plaintiff in his

representative character: and that subsequently to the rendition of this last judgment, plaintiff, under the advice of counsel, filed a bill in chancery to enjoin its collection, on the grounds that William Fagan, sr., who died in Georgia, did not die intestate, but left a will, in which he appointed an executor, that such executor had duly qualified, and taken upon himself the administration of the estate, and that the grant of administration to said Rainey was consequently illegal and void.    This bill is still pending, and the plaintiff has incurred considerable expense in its filing and prosecution, in the way of solicitor's fees, &c.    On this state of facts, the plaintiff claimed credits:

1. For the whole amount of the judgment rendered against him and his securities, including the $100 paid by his intestate, interest and costs.

2. For the expenses incurred by him in the chancery suit. The court allowed him a credit for the original amount of the judgment and costs against him as administrator, less the $100 payment, but refused to allow him credit for that, or any subsequent expenses to which he had been subjected.

The distributees asked the court to charge the plaintiff with the sum of $87, as interest on money of the estate appropriated by him to his own use, which was accordingly done, but the record does not disclose the evidence upon which the court acted.    Judgments were rendered for the several distributive shares.    Those in favor of the infant distributees were rendered in their own names, without the intervention of a guardian, and those in favor of the married female distributees, in favor of their respective husbands in right of their wives, and executions were ordered to issue, &c.    The several rulings of the court, as above set forth, were excepted to on the trial, and are now, together with the judgments rendered, assigned as error.


RICE & MORGAN, for plaintiffs in error.

1. The court erred in rendering judgment in favor of Elijah Jordan, in right of his wife, who was a distributee.    Hudson v. Parker, 9 Ala. R. 459; Petty v. Wafford, 11 Ala. 145.

2. The court erred in rendering judgments in favor of the

several minor heirs of William Fagan; and awarding execution to them without mentioning their guardian. McLeod v. Mason, 5 Por. 223; Sutherland v. Goff, Ib. 508; Sankey v. Sankey, 6 Ala. 607.

3. The litigation with Rainey by the plaintiff in error, was had in good faith, for the purpose of preventing irreparable injury to the estate; and the costs expended by Green in such litigation, should have been allowed to him. *Bettis* v. Taylor, 8 Por. 574; Fitzpatrick, adm'r, v. Hill, 9 Ala. 787. See also Treadwell v. Rainey, 9 Ala. 590, to show that Rainey was not entitled to his recovery. See Harris v. Martin, 9 Ala. 895.

4. Green, in defending a suit against the estate, became personally liable for the debt, and the court should have allowed him the whole amount of the judgment against him as a credit on his account. The Riggs note was defended at the instance of the distributees, and the costs should have been allowed the administrator.

J. B. MARTIN, for defendants.

1. Where an administrator, by unnecessary litigation, involves himself in costs, using his name as administrator, it cannot be made a charge against such estate. O'Neil v. Donnell, 9 Ala. 734.

2. The intestate of plaintiff in error, having recognized the right of Rainey to sell as administrator, by purchasing at his sale, retaining the possession of the property, and making no offer to return it, he nor his representative can defend, when sued for the purchase money. 3 Por. 126; 19 Johns. 77; 6 Ala. 399.

3. Rainey's right to the administration could not be collaterally impeached; and the purchaser at his sale, as such, would take a good title. Wyman et al. v. Campbell, 6 Por. 219; 5 Ala. 264; 6 Ala. 399.

4. The judgment first obtained in the orphans' court in favor of Rainey against plaintiff in error, was ample indemnity for him against the distributees of the estate, and fully authorized him to pay it off; and the fact of his suffering judgment to go against him by default, was conclusive that he held assets sufficient to pay it off; consequently, the two

suits, the one in the circuit, and the one now pending in the chancery court, were voluntary, and unnecessary on the part of the administrator, for which he is alone responsible.    14 Peters, 33; 8 Wheaton, 671; 1 Phillips, 358; 3 Stew. 285; 2 Bibb, 209; Hardin's Rep. 404.

5. The proof fully shows that the plaintiff in error was not entitled to an allowance for the $100 for which he holds a receipt, and admits to have been paid.    4 N. Hamp. 208.

6. The court properly refused to allow the several vouchers set out in the bill of exceptions.    O'Neil v. Donnell, 9 Ala. 734.

7. As to the computation of interest, see 9 Ala. 491; 11 Ib. 521.

8. The decree was properly rendered in favor of the minor heirs.    Ex'rs of Sankey v. Heirs of Sankey, 6 Ala. 607.

9. Where there has been a clerical misprision in the proceedings below, which that court would amend on motion, and the record presents the facts as they should be, this court will amend it at the cost of the plaintiff in error.    Clay's Dig. 322, § 54; Sellers v. Smith, 11 Ala. 264; Lucas and wife v. Hamilton, 13 Ala. 448; Smith v. Robinson, 11 Ala. 271.


COLLIER, C. J.—An administrator is bound to defend the estate of his intestate against claims which he believes to be unjust; and if, under an honest impression that a demand is not a proper charge, he employs counsel, he is entitled to charge a reasonable fee against the estate.    Davis v. Rawlins, 2 Harring. Rep. 125.    Although he is unsuccessful in the suit, yet if he litigated the question of liability in good faith, he shall be reimbursed his costs from the assets of his intestate.    Bettis v. Taylor, 8 Port. Rep. 564.

It is fairly inferable from the record before us, that the administrator was entirely justifiable in his refusal to pay the claim of Riggs.    The widow, and perhaps some of the distributees, advised him not to pay it, expressing the belief that it was unjust, that they had never heard of it, &c.    This admonition, in the absence of all knowledge on the part of the administrator, as may be fairly intended, was quite enough to have authorized him, as a prudent man, to require Riggs to establish his claim by suit.    In making defence

against this demand, it does not appear that he incurred any unnecessary expense, and the orphans' court should have made the proper allowance. Instead, however, of doing this, the charge for costs was wholly rejected.

In respect to the judgment in favor of Rainey, administrator, &c. there can be no question, that if the grant of administration to Rainey upon the estate of William Fagan, sr. was void, as seems to have been held by this court in Treadwell v. Rainey, 9 Ala. Rep. 590, no title in the slave (the consideration of the note upon which the judgment was founded) passed to the intestate of the plaintiff, beyond the life estate of the widow of the elder Fagan. This being the case, it was the duty of the administrator to have defended, and to have enabled him to do so, he should have acquired a knowledge, or at least endeavored to obtain the necessary information previous to the rendition of the judgment. Although it may be that he will make a successful resistance to the recovery of the judgment now pending in chancery, yet the estate should not be charged with the additional counsel fees and costs resulting from the protracted litigation subsequent to the judgment against him in his representative character. These charges are but the consequences of his inattention and neglect.

The record does not discover that the slave referred to, ever went into the hands of the administrator, and has been sold by him as a part of his intestate's estate, or that he is in any manner liable to account for it to the true owner. We cannot therefore assume, that he should be allowed to retain from the estate for his indemnity. Besides, if we are permitted to refer to the facts of the case in 9 Alabama, which we understand to be adopted as if part of the record, it may be asked if it does not appear, that the widow of Rainey's intestate, who had a life estate in the slave at the time of the sale, did not estop herself from asserting her title ; and if she was living when the slave was sold by the plaintiff in error, could he be charged for a conversion ? Lewis v. Mobley, 4 Dev. & Bat. R. 323; Caldcleugh v. Hollingsworth, 8 Watts & Serg. Rep. 302; Poag v. Carroll, Dudley's Rep. (S. C.) 1.

But it is needless to consider these suggestions, as in the condition of the record before us, we cannot say that the ad-

ministrator is entitled to a credit for a greater sum than the judgment first recovered against him, and this, it seems, has been allowed.

As for the $100 which were paid by the intestate in part satisfaction of the debt on which the judgment was rendered, it seems that the administrator was aware of the payment, and allowed Rainey to take his judgment for the full amount of the debt, upon the promise that that sum should be credited. The credit has not been formally entered, but the administrator holds a receipt acknowledging it, and this is quite sufficient. But if it were otherwise, the distributees cannot be prejudiced by the failure of the administrator to avail himself of the payment previous to the rendition of the judgment.

We cannot say, from any thing shown to us, that the charges and allowances for interest are incorrect; but as the case must be sent back, we would merely remark, that attention to our numerous decisions must lead to a correct conclusion, should there be further controversy upon this question.

The motion to dismiss the petition for a distribution, because the widow was unwilling to prosecute it, was rightly denied—it was altogether competent for the other distributees to proceed for their own interests.

In respect to the several parties in whose favor the decree is rendered, the several distributive shares of the children, should have been adjudged to those who were in their minority, to be paid to them through their *general guardians*, if they had such guardians; but a decree which mentioned such children alone, as entitled to their distributive shares, is not reversible on error. It may be that *general guardians* had not been appointed, and if they had, or should be afterwards, their names could be suggested upon the record, and executions ordered to issue in the names of themselves and wards. But the order for an execution to issue in favor of the children is certainly erroneous.

The decree in favor of the female distributees who are married, should not have been that their husbands recover in right of their wives, but that the husband and wife recover for the use of the wife. This modification in the form of a

decree in such a case, is made necessary by the act of March, 1848, "securing to married women, their separate estates, and for other purposes." See Key, adm'r, v. Vaughn et al., at this term. How far it is allowable to amend the irregularities in the decree, will appear from this citation.

For the error in ordering executions to issue in favor of the infant distributees, if it be not amendable as a clerical misprision under the statute, it could be corrected by reversing and rendering. But the record does not inform us the amount of the costs which should have been allowed for the defence of the suit by Riggs, and consequently, the correction cannot be here made by rendering such a decree as the orphans' court should have rendered. The decree must therefore be reversed, and the cause remanded.